United States District Court
for the
Western District of Texas
Waco Division

Nancy Jackson Spinks
Plaintiff

vs.

Bobby Lumpkin TDCJ CID Director; Jerry Sanchez, Region 6 Director of TDCJ; Kimberely Garza, Sr. Warden Christina Melton Crain TDCJ Unit; Assistant Warden Ashworth; Ms. Noyes Crain Unit Classification; Unknown member of Crain UCC Panel; Security and Threat Group Sgt Smith Crain Unit; Captain Sneed Crain Unit; Laundry Manager Kleshik; Unknown Substitute Counsel for offenders Crain Unit

**FILED**

April 14, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ lad _____
DEPUTY

Civil Case No.

**6:25-cv-145**

## Plaintiff's Original Complaint

### A. Parties

1. Plaintiff, Nancy Jackson Spinks, is an inmate serving a ten (10) year sentence for misappropriation by a fiduciary attorney in the Correctional Institutional Division of The Texas Department of Criminal Justice (hereinafter "TDCJ"). Plaintiff is currently housed at the Sycamore Satellite of the Christana Melton Crain Unit (hereinafter "Crain") located in Gatesville Texas, Coryell County.

page 1 of 22

2. Bobby Lumpkin is the Director of the Criminal Institution Division of TDCJ and is being sued in his Individual capacity.

3. Jerry Sanchez is the Director of the Region 6 Division of TDCJ and is being sued in his individual capacity.

4. Kimberly Garza is the Senior Warden of the Crain Unit of TDCJ and is being sued in her individual capacity.

5. Defendant Ashworth was the Assistant Warden of the Crain Unit of TDCJ and is being sued in her individual capacity.

6. Defendant Mayes is member of the Classification Staff at the TDCJ Crain Unit and is being sued in her individual capacity.

7. Unknown UCC panel member of the Crain Unit and is being sued in his/her individual capacity.

8. Sgt. Smith is a Security Threat Group Sgt. at the Crain Unit and is being sued in her individual capacity.

9. Captain Sneed is a Captain at the Crain Unit and is being sued in her individual capacity.

10. Laundry Manager Kleshik at the Crain Unit and is being sued in his individual capacity.

11. Unknown Substitute Counsel for offenders at the Crain Unit and she is being sued in her individual capacity.

## Jurisdiction & Jury Demand

The court has jurisdiction over the lawsuit because the suit is based on federal question for violations of Plaintiff's Constitutional Rights. Plaintiff hereby asserts her Demand for a Jury Trial.

## Venue

Venue is proper in this District under the Prison Litigation Reform Act (PLRA) 28 USC 1915 as the Plaintiff is an inmate in the custody of TDCJ and is housed at the Crain Unit in Coryell County Texas which is in the Western District Waco Texas. There is no other jurisdiction with respect to this action that overrides.

## Condition Precedent

All conditions precedent as required under the PLRA have been performed or have occurred. Defendant has exhausted all administrative remedies and/or has been precluded from access to the administrative remedy process under the two (2) part

internal administrative Grievance
System operated by TDCJ.

## Statute of Limitations

The State of Texas (2) two
year Statute of Limitation applies.

## Facts:

On April 24 2023 the plaintiff was
working in the Laundry Department at
the Riverside Satellite on the Chain Unit.
The Plaintiff's assigned custody at the
time was G1 Outside Trusty. The
Plaintiff was listed on the Laundry
Department Inmate Roster as a tractor
Driver. Nevertheless, Plaintiff was
working as a backdock worker with
soiled and contaminated clothing without
PPE and without Proper training. After
working with contaminated clothing the
back dock workers were assigned to
the clean clothes folding table. At this time
the Plaintiff raised the issue of cross
contamination with Laundry Manager
Kleshik.

In stead of addressing the cross-
contamination concerns Mr. Kleshik
Immediately moved into an aggressive
advesarily posture. He ~~starting~~ Started
by accossing the Plaintiff of wearing an
altered uniform and directed Plaintiff
to remove her uniform in the clothing
room and obtain another uniform from
the inmate worker in the clothing room.
While the inmate was Changing clothing
Mr. Kleshik went to her bunk in

2 Dorm and searched her bunk and destroyed her legal paperwork including processed grievances needed for a pending court case against the Hilltop Unit.

On 4/28/2025 the Plaintiff sent an e-message from her Secures Unity Tablet to her husband, Kenneth Spinks, requesting that he inform the Ombudsman and the prison administrators/Defendants Lumpkin, Sanchez and Garza of the improper stripping and property destruction by Defendant Kleshik. Kenneth Spinks sent the complaint as requested. On the evening of 4/28/2025 Plaintiff was called out to write on Ombudsman Statement regarding her complaint sent to her husband.

On 5/2/2025 Plaintiff returned to the Riverside Laundry Department to report to work. Laundry manager Gibson instructed the Plaintiff to sign back deck worker training and back date it. Plaintiff refused to sign backdated official state documents. On 5/2/2025 Security Threat Group Sgt. Smith called Plaintiff into her officer and informed her she was working on the recent Ombudsman complaint. Sgt. Smith initially led the Plaintiff to believe she was investigating the claims about Kleshik's Conduct. Eventually, after being questioned about her trust account activity, e-messages, phone calls it became evident that Sgt. Smith was building a case against the Plaintiff in retaliation for the Ombudsman complaint opened by her husband. On 5/3/2025 Sgt Smith wrote a code 29 low level disciplinary case for allegedly making a

page 5 of 28

false statement to Defendants Kimberely
Garza, Jerry Sanchez and Bobby Lumpkin.
Inexplicably Plaintiff had never spoken
in person to any of these three people.
The TDCJ disciplinary handbook specifically
states that an inmate may not be
punished for filing a complaint about
prison conditions. Not only was the case
processed in violation of the disciplinary
code it was intentionally classified as
a "Major Disciplinary" case in the
same class as an assault or escape disciplinary
case. Assistant Warden Ashworth was
the staff member that graded the case
as "Major".

On 5/23/2023 Captain Sneed at the
Sycamore Unit conducted a major disciplinary
case hearing against the Plaintiff for
a code 29 making a false statement.
The Defendant Unknown SCFO hearing
counsel ~~sopp~~ submitted detrimental
evidence against the Plaintiff even though
her role was to represent the Plaintiff.
Sgt Smith was the accusing officer. On
5/24/2023 Plaintiff was packed up and
moved from population to a single holding
cell and left there for 10 (ten) days.
While confined in the cell a Unit Classification
Comittee was allegedly conducted by Defendant
Ashworth, Noyes, and Unknown UCC
Defendant, Plaintiff was intentionally
excluded on the UCC panel downgraded
the Plaintiff from a G1 trusty to
a G4 medium custody. Plaintiff was
also punished for the false statement
case from Captain Sneed and taken
from a Line earning S.II to a Line 1
resulting in the loss of good time earning

potential. At the beginning of June 2023, the plaintiff was moved to the Crain G4 cell Block. At the time the Crain Unit Maximum population was 1,500 inmates. G4 was the most restrictive custody housed on the Crain Unit. Less then 15 cells on the entire Crain unit were reserved to house G4 inmates. The Plaintiff had been overnight and without any notice downgraded from an outside Trusty to less then 2% of the Crain Unit that was G4 for the worst disciplinary action. All the Plaintiff had done to result in this action was sent a complaint by e-message to her husband.

Plaintiff's family began a campaign to correct the retaliation inflicted on the Plaintiff for exercises her 1st Amendment Right to free Speech. Kenneth Spinks and Zachary Carroll sent message and left voicemails with the Defendants Garza, Lumpkin and Sanchez demanding an explanation for why Plaintiff was punished for contacting him to complain about Defendant Kjeshrik. During the time Plaintiff was held in the Reception Cell block She experienced an attempted suicide and was questioned by the office of the Inspector General. The further traumatized the Plaintiff and resulted in mental Health intervention by the Unit Psychiatrist Dr. Hadday.

✱ See Attached Mental Health Records.

After approximately 2 weeks dozens of emails and telephone calls and a trip to Gatesville Texas Plaintiff's husband was able to have the "false Statement Case" overturned and the Plaintiff moved back to

page 7 of 2

G2 Population, However, Warden Garza refused to meet with Kenneth Spinks and discuss his concerns about retaliation and Warden Garza was still in a mindset of retaliating. Warden Garza had the Plaintiff moved into the Crain Riverside Satellite, 5 Dorm Pod D and housed in a "maintenance bed" that flooded. When unit maintenance restricts a bunk from occupancy it is labled as a "maintenance bed" and inmates are prohibited from being housed in maintenance beds. Nevertheless, Warden Garza overroad this process and moved the Plaintiff to a bed that flooded and moved her with G3 custody offenders to continue the retaliation. Again Plaintiff husband had to intervene and now contact Brian Patrick of the Ombudsman Office to raise the retaliation. Mr. Patrick the Director of the Ombudsman contacted the Crain Unit and finally had the Plaintiff properly housed in Riverside 4 Dorm with like custody G2 inmates.

## <u>BAD FAITH Qualified Immunity</u>

Any attempt by Defendants to file a motion to Dismiss based on the Affirmative Defense of Qualified Immunity would be in bad faith. The Defendants are required to show their conduct that is complained of is discretionary at the outset of asserting a qualified Immunity Defense. The Gravamen of this action turns on the use of the TDCJ Disciplinary System to Chill the free Speech of the Plaintiff

The Disciplinary Code Level 3 that was used to initiate the retaliatory scheme against the Plaintiff was:

Code 29. Knowingly Making False Statements for the Purpose of Harming another Person During an official Investigation.

Disciplinary Rules and Procedures for offenders Attachment C States the following Prohibition regarding a Code 29 disciplinary case:

Offenders may not be penalized for filing a grievance or lawsuit, participating in a lawsuit or discussing or writing to others about actual or potential legal actions or other forms of grievance or complaint.

Every single Defendant named herein engaged in conduct that was a violation of the prohibition above in order to Chill the Plaintiff's free Speech and impose maximum penalties against the Plaintiff. Because the above is a mandatory prohibition the Defendants are estopped from claiming that their retaliatory conduct was discretionary.

On the "TDCJ Disciplinary Report and Hearing Record" form number 1-47 MA (08/19) under the "evidence presented" Section Defendant Captain Sneed in her capacity as hearing officer noted "email to husband" as the evidence relied on to find Plaintiff Guilty of the Code 29 disciplinary case.

page 9 of 22

# Relevant Legal Authority

## Prison Litigation Reform Act of 1995 (42 USC 1997)

### I. Exhaustion of Administrative Remedies

The Prison Litigation reform act of 1995 (hereinafter PLRA) demands as a condition precedent to bringing a suit to challenge prison conditions an inmate must exhaust admini-strative remedies as are available. The Texas Prison System employs a 2 step Grievance Process to satisfy the administrative Remedy PLRA Requirement.

The Supreme Court has held in Ross v. Blake 578 US 632, 136 S.Ct. 1850 (2016) that administrative remedies are not available and therefore exhaustion is not required when "an administrative procedure operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Further more the Supreme Court has held that an administrative remedy is not available when Prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation.

The Plaintiff has been incarcerated for 7½ years consecutively and has been housed a several units in Gatesville Texas. Sworn testimony & Unsworn Declarations from Plaintiff & her family that her grievances are "not taken seriously" intentionally delayed Lost in the system & in one instance her property was targeted and her paperwork, Specifically case research & Processed grievances destroyed.

The grievance system in the Texas Prison System is a shamm with absolutely no teeth, fortunately, Plaintiff has a unwavering family support that monitors Plaintiff's welfare at all times. This is not the case for the majority of the Texas female Inmate Population who are left with NO meaningful complaint process for serious issues. Grievances are lost, improperly rejected & screened. Grievance forms are impossible to obtain. It is not until after after situations result in tangible harm to an inmate that the department acts.

The solution would be simple: Make the Grievance System Digital via the Securus Tablet issued to each Inmate. I suspect this will never happen because TDCJ does not want to streamline any legitimate complaints.

Plaintiff affirmatively Pleads that she has met the conditions Precedent for administrative exhaustion and that relevant Grievances will be provided through discovery. In the alternative, Plaintiff pleads that the administrative remedy process has never been meaningfully available to her based on statements made to her husband by Crain Grievance Staff that Plaintiff files too many Grievance and they are not taken seriously.

## 42 USCS § 1983

To state a claim under 42 USCS 1983 a Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that

Page 11 of 22

The alleged deprivation was committed by a person acting under color of State law. Parratt v. Taylor 451 US 527 (1981). Plaintiff will satisfy the two prong test for an action under 42 USCS 1983 by pleading as follows:

A) Constitutional Rights:
    i) 1st Amendment Right to Free Speech; and
    ii) 1st Amendment Right to Access to Courts; and
    iii) 14th Amendment Right to Due Process

B) Persons Acting Under Color of State Law

All Defendants named herein are employees of the Texas Department of Criminal Justice and violated the Plaintiff rights while at work for TDCJ. The Plaintiff is an inmate and was incarcerated when the adverse conduct by the Defendants occurred.

Punitive Damages 1983 Claim

It is well established in the Courts that Plaintiffs are entitled to seek punitive damages under 42 USCS 1983. The Supreme Court in Smith v. Wade 461 US 30 (1982) found that reckless or callous disregard for Plaintiffs rights as well as intentional violations of federal laws should be sufficient to trigger a Jury's consideration of appropriatness of Punitive Damages. This case is a shameful example of high level Criminal Justice administrators

Plotting and Planning a malicious scheme that required numerous parties involvement to dismantle safeguards in the disciplinary system in order to torment the Plaintiff and set an example to the offender population that any attempts to complain about conditions of confinement at the Crain Unit will be met with severe punishment and Retaliation. The retaliation resulted in the Plaintiff suffering mental anguish and seeking psychiatric care.

## First Amendment - Freedom of Speech

The first Amendment of the United States Constitution protects an inmate's right to free speech so long as it does not interfere with the smooth & efficient operation of the prison facility. The Supreme Court has held that incarceration does not divest prisoners of basic Constitutional protections. Inmates retain certain 1st Amendment rights albiet narrowed by penological purpose. The courts have also consistently held that inmates have a right to complain about conditions of confinement to prison administrators. Morris v. Powell, 449 F. 3d 662 694-86 (5th Cir. 2006). "Complaining about the conduct of corrections officers through proper channels is a constitutionally protected activity.

## Retaliation Under Section 1983

The 5th Circuit in the Jones Case held to state a valid claim for retaliation a prisoner must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right (3) a retaliatory adverse act; and (4) causation. page 13 of 22

# 14th Amendment Due Process/Prison Disciplinary

Courts have held that the Texas "good time" Statute & Mandatory Supervision scheme for early release creates a Constitutional expectancy at early release on parole that cannot be denied too without Due Process. See Teague v. Quarterman 482 F3d 769 776-777 (5th Cir. 2007). The Plaintiff at all times has been an inmate eligible for release to Mandatory Supervision

# 1st Amendment Access to Courts

The Constitution requires the narrow right to inmates to be able to present their to the courts for non-frivolous filings. Legal research & documents that relates to lawsuits challenging conditions of her confinement or convictions. Lewis v. Casey 518 US 343, 349-51.

## Count 1 - 1983 1st Amendment
### Freedom of Speech Retaliation
Defendants: Gaza, Sanchez, Lumpkin, Smith
Sneed, Noyes, Ashworth, Unknown VCC, Unknown SCFU

1. Plaintiff's e-message sent to her husband Kenneth Spinks on April 2023 complaining about PPE (Personal Protection Equipment); Safety; Work assignments of PREA Stripping procedures at the Crain/Riverside Satelite Laundry Department of harassment & retaliation by Laundry Manager Kleshik was the Plaintiff's protected free speech. TDCJ encourages family complaints to the ombudsman & the courts have held inmates have a right to complain about conditions of confinement and correction officers. See Exhibit of ombudsman posting at units.

2. Prongs 2 & 3 of a 1983 retaliation claim are satisfied by the Hearing Record Report (attach to brief case # 6:24-CV-408) of the "Code 22 False Statement Case" processed against Plaintiff. The Hearing Report has "e-mail to husband" as the second piece of evidence necessary to prosecute the false disciplinary against the Plaintiff. The "intent" to retaliate was clearly listed on the Case Report by Security Threat Group Sergeant Smith which stated the Plaintiff made a false statement to Defendants GARZA, Lumpkin Sanchez and the Ombudsman because she complained to her husband and asked him to send her complaint to the Defendants GARZA Lumpkin & Sanchez and the ombudsman.

3. The false displinary case 20230164735 that was later overturned was the

page 15 of 22

beginning of a series of retaliatory
acts resulting solely from the
e-message the Plaintiff sent to Kenneth
Spinks.

4. After the false statement Disciplinary
Case was written, in violation of the
specific Prohibition of Code 29 in the
TDCJ Disciplinary handbook, the case
was graded as a major case. Next
the Defendant Unknown Substitute Counsel
for offenders intentionally obtained
negative statements against the Plaintiff
from Defendant Kleshik's co-worker CO Titus
and submitted them at the disciplinary
hearing against the instruction of the Plaintiff.
The SCFO is appointed to represent the
inmate at a disciplinary hearing. However
the Defendant Unknown SCFO had
a conflict of interest in that her
co-worker and the other SCFO on the
Crain Unit was Defendant Kleshik's wife.

5. Once the case was heard by Defendant
Captain Sneed who served as hearing officer
the maximum penalties were imposed.
45 days cell restriction, tablet, phone, commissary
recreation and the Plaintiff was demoted
a Good time earning level from SIII to line
1 thereby resulting in a loss of good time.

6. Yet the retaliation continued. The 3
panel members from the alleged UCC panel
demoted the Plaintiff from an outside
Trusty all the way to a G4 custody
inmate locked in a cell. So now the
Plaintiff was housed in a cell with no
AC and on cell restriction so no

authority to leave the cell. Upon investigating this matter Plaintiff's husband upon talking to Defendant UCC Member Ms. Noyes he would learn to no UCC panel was ever conducted and Ms. Noyes simply was told by an unknown administrator to classify the Plaintiff as a G4. Normally an inmate is called before UCC and given notice but this process was intentionally skipped.

7. After weeks of phone calls, emails & travelling to Gatesville Kenneth Spinks was finally able to get the Plaintiff moved from G4 cellblock back to population. On the Plaintiff's way out of the new UCC panel Defendant Garza stopped her at the flight of stairs and said "Spinks you are going to get what's coming to you". Plaintiff was moved into a maintenance condemned flooding bunk with G3 inmates who serve 50 years to life. See ~~Exhibit~~ email from Brian Patrick Ombudsman Director investigating which will be attached to affidavit from Kenneth Spinks.

8. Causation is crystal clear. But for the complaint e-message to Plaintiff husband none of the adverse acts above would have occurred. Absolutely every negative retaliatory Act above flows directly from the prosecution of the Code 24 false statement case and the acts involved each Defendant named at all or various stages.

page 17

Count 2 - Due Process Pro
Disciplinary Pxess
Defendants: Noyes, Ashworth, Unknown Uce
Unknown Substitute Counsel for Offender, Sneed

① The Liberty interest that triggers the
inmate's/Plaintiff right to Basic Due
Process in this case is the fact that
She has an expectency of release under
the Mandatory Supervision Scheme and
thereby her Good Conduct Time & Liberty
Interest in free Speech

② Plaintiff started the Mandatory Supervision
process in 2021 and has a Mandatory
review for release ever approximately ten(10)
months. In 2023 as a result of the
fact that She was prosecuted for a
"False Statement" case the Plaintiff
was placed into a Situation wherein her
Good time and Mandatory Supervision
expectancy of release was placed into
jeopardy. Additionally, her right to Free Speech
was impeded therefore triggering Due Process rights
when attempting to punish her for Protected free
Speech

③ The hearing Process violated Plaintiff
right to Due Process by the fact that
the Hearing Officer Captain Sneed refused
to respect Plaintiff's objection to statements
introduced by Plaintiff's representative the
SCFO from adverse Parties. Moreover,
the hearing officer improperly relied upon the
Plaintiff's e-message to her husband as one of
the two necessary pieces of evidence needed
to punish her.

④ The Defendant's Unknown Substitute
Counsel for offender appointed to represent
the Plaintiff in the hearing failed to
disclose her conflict of interest with Defendant
Kleshik's wife as well as ignore instructions

by the plaintiff not to produce statements that were adversary from officer/ Defendant Kleshik's co-worker laundry officer Titus.

(5) The decision to allegedly conduct the UCC hearing "in abstentia" and without notice to the Plaintiff was a violation of Due Process by the UCC members that signed the UCC report demoting Plaintiff from Trusty G1 to G4 Status. The alleged Panel members were Defendants: Noyes, Ashworth & Unknown UCC member.

(6) Defendant Noyes admitted on the telephone to Kenneth Spinks, Plaintiff husband, that no UCC review was ever conducted. Defedant. Noyes stated to Mr. Spinks she received a call to demote Plaintiff in the system and then she created an "in abstentia" UCC Notice without any panel hearing.

## Count 3: 1st Amendment
### Access to Courts

Defendant: Kleshik

"To claim the loss of his legal paperwork constituted a denial of his access to the Courts, Plaintiff must demonstrate the prison authorities hindered his efforts to pursue a non-frivolous legal claim" Lewis v. Casey 518 US 343, 349-51. The constitution requires the narrow right to be able to

present their grievances to the courts for non-frivolous filings. Legal research and writing that relates to valid lawsuits challenging conditions of her confinement that are intentionally destroyed form a basis for an access to courts 1983 retaliation claim.

On April 27, 2023 after questioning certain issues at work Laundry Manager Kleshik entered Plaintiff bunk area At Crain/Riverside Satellite Dorm to search for contraband laundry. During the search Defendant Kleshik emptied manila envelopes contain grievances, Legal Research and draft PET complaints spanning nine months of work belonging to the Plaintiff. Defendant Kleshik removed Processed Grievances which would later vanish and poured water from Plaintiff's Hot Pot on the remaining Legal research and then stomped on and destroyed the papers.

The grievances that vanished and legal research and work destroyed all related to pending case 6:24-cv-408-ADA in the federal western District of Texas. The adverse actions of Defendant Kleshik set Plaintiff's efforts in filing case 6:24-cv-408-ADA significantly and caused her to run dangerously close to exceeding her statute of limitation. To date, and after numerous requests to numerous departments Plaintiff still has not recovered copies of the destroyed grievances.

As a Laundry Manager looking for Laundry Contraband Defendant Kleshik had no legitimate Penological Purpose to

search ~~manual~~ manila folder and paperwork to locate laundry.

## Mental Anguish

As a result of the adverse actions by all Defendants the Plaintiff suffered severe mental anguish. For the first time throughout her incarceration the Plaintiff was forced to seek emergency mental health treatment. Plaintiff was prescribed prescription medication to control her high anxiety & paranoia. See exhibit 3.

## Damages

As a direct and proximate result of the separate & combined adverse & retaliatory actions of all Defendants the Plaintiff's fundemental Constitutional Rights were violated Plaintiff seeks recovery of:

A. Medical expenses in the past & future;
B. Mental Anguish in past & future;
C. Pain and Suffering;
D. Punitive / Exemplary Damages
E. Compensatory Damages

## Prayer:

For the reasons pled herein Plaintiff respectfully requests:

A. All relief and damages the Court deems appropriate.

Respectfully Submitted,

N Spink

Nancy Spinks TDCJ 02173860
Crain Unit / Sycamore Satellite 3B-15
1401 State School Rd.
Gatesville, Texas 76599

## The Law

In accordance with Section 493.016 of the Texas Government Code, the Texas Board of Criminal Justice (TBCJ) Ombudsman Program provides a single point of contact for elected officials and members of the general public who have inquiries regarding the agency, inmates, or staff. When necessary, investigations shall be coordinated through appropriate Texas Department of Criminal Justice (TDCJ) officials. The TBCJ Ombudsman Office strives to provide timely responses to the public. Confidentiality requirements in Chapter 552 of the Texas Government Code can restrict some information from being released.

**GENERAL INMATE STATUS INFORMATION IS ONLINE AT WWW.TDCJ.TEXAS.GOV OR CALL 1-800-535-0283**

### Problem at the Unit? Try to Resolve it, First.

For expediency, it is best to attempt to resolve issues and obtain information at the unit or local supervising parole office. However, if that is not possible, contact the Office of Independent Ombudsman.

## How to Contact a TBCJ Independent Ombudsman

 **Email**
io@tdcj.texas.gov

 **Call** (936) 437-5620
Toll Free: (833) 598-2700

 **Write** P.O. Box 99
Huntsville, TX 77342-0099

 **Fax** (936) 437-4930

The Independent Ombudsman may assist you with general issues concerning the agency's operation, policy, and procedures, along with issues relating to incarceration. Bilingual staff is available. Please submit inquiries in writing.

**SE HABLA ESPAÑOL**

## Texas Board of Criminal Justice

Office of the
# Independent Ombudsman

### MISSION

The Texas Board of Criminal Justice, Office of the Independent Ombudsman, is committed to providing the public, elected or appointed state officials, and inmates a confidential avenue for complaint resolution by receiving, reviewing, investigating, and responding to inquiries regarding non-criminal matters within the Texas Department of Criminal Justice.



24-50965.281

**VISIT OIO ONLINE WWW.TDCJ.TEXAS.GOV/TBCJ/OIO OR CALL THE HOTLINE 1-833-598-2700**

## WHAT AN OMBUDSMAN CAN DO:

- Act as a liaison between the TDCJ and the general public;
- Respond to questions concerning a specific inmate;
- Respond to informational inquiries regarding agency policies, procedures, or actions;
- Facilitate problem resolution;
- Make appropriate referrals to agency staff;
- Act as a contact and information resource for special interest groups
- Gather information from several sources within the Agency to provide concise answers to an inquiry, thereby eliminating the need for the requestor to contact different areas of TDCJ.

## WHAT AN OMBUDSMAN CANNOT DO:

- Override decisions made by appropriate authorities (i.e., Judges, Board of Criminal Justice, Office of the Inspector General staff, etc.).
- Handle issues outside the oversight of the Texas Department of Criminal Justice.

## DID YOU KNOW?

TDCJ has an Internet website that provides information about its programs, policies, and administrative staff. You may find many answers to your questions at:

- WWW.TDCJ.TEXAS.GOV

Many concerns can be best addressed by contacting unit administrative staff at the inmate's unit of assignment.

- If you would like additional assistance after contacting the unit, reach out to the Office of the Independent Ombudsman.

## HOW DOES AN INMATE SEEK PROBLEM RESOLUTION?

The **INMATE GRIEVANCE PROGRAM** was developed to enhance lines of communication between staff and inmates by providing a resource within the TDCJ for resolving concerns of inmates affecting their incarceration.

The grievance process provides the inmate an opportunity for problem resolution at two distinct administrative levels.

**STEP 1** allows the inmate to request relief from unit administration.

**STEP 2** affords the inmate an appeal process to Central administrative staff. The offender completes a grievance form and submits the completed form to the Unit Grievance Investigator. Inmates receive a written response which they may appeal to Step 2 if desired.

## USE STEP 1 & STEP 2
Encourage inmates to utilize this process. It is an opportunity for inmates to enhance their skills in responsible problem resolution.

24-50965.280

## CORRECTIONAL MANAGED HEALTH CARE
## MENTAL HEALTH OUTPATIENT SERVICES
### Psychiatric ITP Initial Visit

Name:   SPINKS, NANCY J                                          Date:      06/15/2023 08:24
TDCJ#:  2173860                                                 Facility:   CRAIN (GV)

Reminder Completed: MH OP PSYCHIATRIC INITIAL EVAL

Dx hx: Bipolar 1 disorder

Suicide/Self injury: denies SA and SIB.

Hospitalizations: Denies

Outpatient/Meds: In county for 2 weeks. Before coming into county had been diagnosed with bipolar disorder.
Does not get depressed.

From clinical interview by unit MH clinician
   Psychiatric history:
   She indicated that she was part of an OIG investigation for an attempted suicide on 05-30-2023.   Furthermore,
she reported that since that time she has experienced increase in anxiety, paranoia, depression, and interrupted sleep.
She self-reported "this has happened to me before in the free world when my dad died, and I was prescribed Abilify".

Subjective:

   Pt is a 52 yo F with a diagnosis of Bipolar 1 disorder who presents to clinic today for intake stating that her
husband came to see her and he felt like she was getting paranoid.
   Pt reports at Hilltop had some problems w Warden.   Then came here and is also having a problem w Warden.
   While I was in seg another inmate hung herself, and they wanted me to write a stmt.   Pt feels like they are trying
to set her up.
When asked about her father she recounted a story about her dad being Serbian and the hospital nurse was surely a
german and after he came in the room her dad got worse.   At that time she took Abilify.
   Medication side effects: no meds

Objective:
   Mood is described as not depressed, but worried about situation, anxious
   Affect is   hypomanic and paranoid/anxious
   No report of SI/HI. No SIB. "No ma'am"
   No evidence of hallucinations. Does have paranoia/delusions.   Pt denies – but presents as paranoid
   Thought processes are logical and goal directed.
   Limited Insight and judgment is fair

Assessment:
      Summary of clinical findings:     Pt presents w elevated mood, and paranoid thought process. Was started
on Effexor by medical for menopause sxs several months ago and her thinking has gotten more disrupted since starting
antidepressant.

Plan:
      Meds: Add Abilify

      Informed of plan.   Risks and benefits to trtmt discussed. Questions asked and answered.
   Discussed medication side effects and importance of taking meds as prescribed
   Discussed the risks, benefits, and alternatives to the treatment plan as specified above.
         Patient agrees to the recommended treatment(s).
         Discussed that some medications can affect the way the body relates to excessive heat.
         Discussed appropriate work restrictions.
         Patient will contact nursing/security if he/she feels dizzy, confused, or over-heated.
         Patient understands that excessive heat can cause life-threatening conditions.
         Patient acknowledges understanding regarding hydration when heat is extreme.

Exhibit 3

4/9/2025

Court Clerk                              6:25cv145
Western District of Texas
Waco Division
800 Franklin Ave Room 380
Waco Texas    76701

Re. Original Complaint &
     Application In forma Paupis

Honorable Clerk:

     Please find original complaint for a new
inmate civil rights case to be filed with the
Court & Served on the Attorney General's office.
If possible I am requesting this be filed
on Judge Albright's Docket as many of the
Issue and parties are interconnected with
pending case # 6:24-CV-408-ADA.

                    Respectfully,
                    Nancy Spinks, Pro Se Plaintiff
                    TDCJ # 02173860
                    Crain Unit / Sycamore Satellite
                    3B-15
                    1401 State School Rd
                    Gatesville TX  76599

Spinks 02173860
Crain /Sycamore 3 B15
1401 Steele School Rd
Batesville TX 76599

Court Clerk
Texas Western District
Waco Division
800 Franklin Ave Room 380
Waco TX 76701

RECEIVED
APR 14 2025
F CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

Legal Mail

PRIVILEGED OFFENDER MAIL NOT
INSPECTED BY TEXAS DEPARTMENT
OF CRIMINAL JUSTICE
CORRECTIONAL INSTITUTION DIVISION